**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Alexis Rodriguez, | CV 14-2139-TUC-JAS (JR) |
| Petitioner, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Louis Winn, Jr., | |
| Respondent. | |

Pending before the Court is Petitioner Alexis Rodriguez's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2241.  Rodriguez is currently confined in the United States Penitentiary in Tucson, Arizona ("USP-Tucson"), and alleges that his rights were violated during a disciplinary hearing and requests that his Good Conduct Time credits and other privileges be restored.  In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and

1

recommendation.   As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

## I.        RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2011, Rodriquez was convicted in the Eastern District of New York of robbery and weapons related charges[1] and was sentenced to serve a 131-month sentence.  Doc. 9-1, p. 3.  He has been incarcerated at USP Tucson since August 11, 2011, and his Good Conduct Time ("GCT") release date is November 15, 2019. *Id.*

On October 30, 2015, Rodriguez returned to USP Tucson after "being on Writ for two years and Rikers Island, New York fighting a state case."  Doc. 1-1, pp. 1-2.[2] Two days later, on November 1, 2013, Rodriguez provided a urine sample pursuant to the prison's Urine Surveillance Program.  The specimen was assigned specimen number BOP0002095528, and the number was affixed to the specimen bottle and entered into a urine surveillance log.  Doc. 9-1, p. 4.  On November 6, 2013, the test results were returned to USP-Tucson and showed that specimen number BOP0002095528 had tested positive for opiates and marijuana.  Doc. 9-2, p. 43.

---

[1] Rodriguez pled guilty to Conspiracy to Obstruct Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).  Doc. 9 (Answer), p. 2.

[2] Presumably, Rodriguez was at Rikers Island in New York pursuant to a writ of habeas corpus ad prosequendum.   However, neither Rodriguez nor Respondent submitted any documentation related to the writ or the terms under which Rodriguez was moved and held at Rikers Island.

1       On November 14, 2013, Special Investigative Supervisor E. Boston prepared

2 an Incident Report indicating that Rodriguez tested positive for opiates and marijuana

3 and charging him for the violation of Prohibition Act Code 112 for the use of

4 narcotics, marijuana, drugs or related paraphernalia not prescribed by medical staff.

5 Doc. 9-2, p. 41, 42.  The Incident Report was a rewrite of a misplaced report and was

6 delivered to Rodriguez by Lieutenant R. Reed on November 15, 2013.  *Id*., p. 41.

7 Rodriguez was advised of his rights and offered the opportunity to comment on the

8 charges and stated, "I came from a State prison in New York and I was using when I

9 was there, when I transferred here I told them this on intake and told them that if I

10 was UA'd I was going to be dirty from before I was transferred here."  *Id*., p. 42.

11 Based on the information recorded in the Incident Report, Lieutenant Reed concluded

12 that the charge of violating section 112 was supported and accurate.  *Id*.  Based on

13 those findings, the Incident Report was forwarded to the Unit Disciplinary

14 Committee ("UDC") for further review.  *Id*.

15       On November 18, 2013, Correctional Counselor Y. Flores convened a hearing

16 before the UDC.  Rodriguez was advised of his rights and offered the opportunity to

17 comment on the charges.  *Id*., pp. 3-4, 41.  The hearing officer reported his comments

18 as follows: "When inmate arrived to USP-Tucson from writ he stated that he advised

19 the R&D officer that he used drugs.  Inmate states he noted this on paperwork given

20 to him to fill out."  *Id*., p. 41.  The UDC's decision, based on the severity of the

21 alleged violation, referred the matter to the Disciplinary Hearing Officer ("DHO"),

22

1   along with the recommendation that Rodriguez be subjected to disciplinary

2   segregation or the loss of GCT credits.  *Id*.

3        On December 10, 2013, DHO Phillips convened a Discipline Hearing on the

4   charge against Rodriguez and subsequently prepared a Discipline Hearing Report.

5   *Id*., pp. 38-40.  DHO Phillips noted that Rodriguez had waived staff representation

6   and gave him the option of postponing the Discipline Hearing until his requested

7   staff representative was available, but Rodriguez elected to proceed.  *Id*., p. 38.  The

8   DHO also noted that Rodriguez had waived his right to call witnesses at the hearing.

9   *Id*.

10       In her report, the DHO noted that she reviewed the toxicology report, a chain

11  of command form, and the medical staff memorandum.  *Id*.  The DHO noted that

12  Rodriguez admitted the charges and reported the following as his statements:

13       I came from the State Prison in New York and I was using when I was
         there.  When I transferred here I told them this on intake and told them
14       that if I was UA'd, I was going to be dirty from before I was transferred
         here.

15
         I advised the R&D office that I used drugs and noted this on paperwork
16       given to me to fill out.

17       I came from the state, no [sic] the feds.  I used marijuana in the state
         prison, not the BOP.
18
    *Id*., pp. 38-39.  Based on the cited evidence and Rodriguez's statements, the DHO
19
    determined that he "did commit the prohibited act of code 112, Use of Marijuana."
20
    *Id*., p. 39.  The DHO also noted that:
21
         during the time you were at the New York State Prison, you were on a
22       writ and you were still under the rule/guidelines . . . outlined by the

                                            4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

> Federal Bureau of Prisons. It should also be noted, that you have been sentenced to the Bureau of Prisons for a lengthy period of time and are aware that the Use of any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants are against the rules.

*Id*. Having found that Rodriguez had violated code 112, the DHO sanctioned him with 30 days of disciplinary segregation; the loss of 41 days of GCT; the loss of one year of telephone privileges; and the loss of one year of visit and visitor privileges. *Id*., p. 40. She then advised Rodriguez of her findings, the evidence, the sanctions, and her reasoning. On January 6, 2014, the DHO gave Rodriguez a copy of the decision, which advised him of his right to appeal the decision "to the Regional Director within 20 calendar days under the Administrative Remedy Procedures." *Id*.

On January 15, 2014, Rodriguez appealed the outcome of the Discipline Hearing under the Administrative Remedy Program to the Regional Director at the Western Regional Office. Doc. 9-1, p. 46. Rodriguez claimed that the DHO's decision violated his due process rights and that the BOP did not have jurisdiction over him while he was in state custody. *Id*. On February 7, 2014, the Regional Director denied the appeal, finding that Rodriguez had been afforded due process as required by the BOP policy and finding no abuse of discretion on the part of the DHO. *Id*., p. 45.

On March 12, 2014, Rodriguez appealed the decisions of the DHO and Regional Director to the Central Office, contending that the evidence and law in support of his position had not been properly considered. *Id*., p. 44. On May 21, 2014, Rodriguez was advised by FCC Tucson Executive Assistant John Stahley that

5

1    due to a backlog, Rodriguez could "consider the absence of a response to be a denial

2    on the appeal/s exhausted at this level."  Doc. 1-1, p. 15.

3         Rodriguez filed the instant petition on May 30, 2014.   Doc. 1, p. 9.

4    Subsequently, on November 6, 2014, the Acting Administrator for National Inmate

5    Appeals denied Rodriguez's appeal, holding that:

6             the required disciplinary procedures were substantially followed and
              each of your Due Process rights were upheld during the discipline
7             process.   The greater weight of the evidence supports the DHO's
              decision, and the sanctions imposed were commensurate to the severity
8             level of the offense and in compliance with policy.

9    Doc. 9-1, pp. 39-40.

10   **II.    DISCUSSION**

11        **A.    BOP Disciplinary Jurisdiction**

12        Rodriguez's threshold contention is that the prison did not have jurisdiction to

13   sanction him because his marijuana use occurred while he was in New York state

14   custody.  A similar argument was raised in *Capozzi v. Warden USP-Lewisburg*, 610

15   Fed.Appx. 105 (3rd Cir. 2015).  There, Capozzi was serving a federal sentence for

16   firearms and extortion offenses when he was released to the custody of the United

17   States Marshals Service pursuant to a writ of habeas corpus ad testificandum to

18   testify in a state court matter.  *Id*. at 105.  The Marshals delivered him to a county

19   detention center and, while being transported by county authorities to the airport for

20   his return flight to the federal facility, Capozzi escaped.  *Id*.  After his capture,

21   Capozzi was disciplined for his escape under the BOP Inmate Discipline Program

22   ("IDP") and sanctioned 68 days of good conduct time.  *Id*.  He challenged the

1    sanctions by filing a petition under section 2241 alleging that the BOP lacked

2    jurisdiction to discipline him because he was not in BOP custody at the time of the

3    escape. *Id*.

4            Capozzi's argument was evaluated under the since repealed 28 C.F.R. §

5    541.10(a) (2010), which described the inmates to which the BOP's IDP applied, and

6    the court concluded that even though he was in a state facility on a writ at the time of

7    his escape, the provisions of the IDP continued to apply to him.  *Id*. at 108.  Under

8    that version of the regulation, the court found that Capozzi was, "at the very least,

9    under the constructive control of the BOP at the time of his escape." *Id.*  Although

10   the regulation has since changed, the Court agrees with the Respondent that the IDP

11   applies to Rodriguez just as it did to Capozzi.

12           The current federal regulation governing the applicability of the IDP provides

13   that:

14           This program applies to sentenced and unsentenced inmates in Bureau
             custody.  It also applies to sentenced and unsentenced inmates
15           designated to any prison, institution, or facility in which persons are
             held in custody by direction of, or under an agreement with, the Bureau
16           of Prisons.

17   28 C.F.R. § 541.2.  As Respondent contends, and Rodriguez does not contradict,

18   Rodriguez's time at the New York state facility was due to a specific writ of limited

19   scope and duration.[3]   Rodriguez has presented no evidence that the BOP ever

20   _____

21   [3] The BOP's Program Statement with regard to § 541.2 states that the "policy applies
     to all persons in the custody of the Federal Bureau of Prisons or Bureau contract
22   facilities . . . [but does] not apply to Federal inmates designated to a non-Federal

                                           7

1  relinquished the exercise of direction his custody.  As such, he remained subject to

2  the IDP program's requirements while designated to the New York facility.

3      **B.    Due Process**

4      Federal prisoners have a statutory right to good time credits.  *See* 18 U.S.C. §

5  3624.  "It is well-settled 'that an inmate's liberty interest in his earned good time

6  credits cannot be denied without minimal safeguards afforded by the Due Process

7  Clause of the Fourteenth Amendment.'"  *Mitchell v. Maynard*, 80 F.3d 1433, 1444

8  (10th Cir. 1996) (quoting *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir. 1991)).

9  "Due process in a prison disciplinary hearing is satisfied if the inmate receives

10  written notice of the charges, and a statement of the evidence relied on by the prison

11  officials and the reasons for disciplinary action."  *Zimmerlee v. Keeny*, 831 F.2d 183,

12  186 (9th Cir. 1987).

13      Rodriguez's contends is that his procedural due process rights were violated

14  because "[t]here was a 14 day delay in the handling of his incident report."  Doc. 1,

15  p. 4.  However, even if there was a violation of the BOP's regulations, delay by itself

16  does not violate due process.  *See Bostic v. Carlson*, 884 F.2d 1267, 1270 (9th Cir.

17  1989); *see also Brown v. McGrew*, 2013 WL 6512948, at *5 (C.D. Cal. 2013)

18  ("Thus, even if Petitioner did not receive the report within 15 workdays of the

19  _____

20  facility (e.g., inmates serving Federal sentences in state or county facilities)." BOP
Program Statement 5270.09 (eff. Aug. 1, 2011).  There is no evidence that Rodriguez

21  was designated to the New York facility to serve his federal sentence; rather, it is
undisputed that he was designated to the state facility pursuant to a writ of limited

22  duration.

8

1   DHO's decision, his constitutional rights were not violated by the alleged delay.");

2   *Armstrong v. Warden of USP Atwater*, 2011 WL 2553266, 8 (E.D. Cal. 2011) ("[A]

3   violation of a BOP regulation, without more, does not rise to the level of a due

4   process violation.").  To justify relief, the delay must be accompanied by prejudice.

5   *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (requiring a showing of

6   prejudice to establish a due process violation in a proceeding under 28 U.S.C. §

7   2254); *Smith v. United States Parole Commission*, 875 F.2d 1361, 1368-69 (9th Cri.

8   1989) (showing of prejudice required to establish due process violation in a

9   proceeding under 28 U.S.C. § 2241).

10         Here, Rodriguez has not alleged prejudice and the Court can discern none.

11   The DHO's decision was based entirely on the urine analysis and other documentary

12   evidence the reliability of which was not affected by any alleged delay in handling

13   the matter.  Similarly, Rodriguez's explanation of the positive results remained the

14   same throughout the administrative process and remains intact in the pending habeas

15   petition.  His claim is that the positive result for opioids resulted from a prescription

16   medication and that he should not have been penalized for using marijuana while he

17   was in a New York state prison.  The Court cannot see how any delay impacted

18   Rodriguez's ability to present these facts in his disciplinary proceedings.

19         Rodriguez's remaining due process arguments are substantive.  Because

20   good time credits are a protected liberty interest, the decision to revoke credits must

21   be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445,

22   454 (1985).  In *Hill*, the Supreme Court stated:

We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ." *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. [103], at 106, 47 S.Ct., [302] at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *See ibid.*; *United States ex rel. Tisi v. Tod*, 264 U.S. 131, 133–134, 44 S.Ct. 260, 260–261, 68 L.Ed. 590 (1924); *Willis v. Ciccone*, 506 F.2d 1011, 1018 (C.A.8 1974).

*Superintendent v. Hill*, 472 U.S. at 455–56.  The Constitution does not require that the evidence logically preclude any conclusion other than the conclusion reached by the disciplinary board; there need only be some evidence to ensure there was some basis in fact for the decision. *Superintendent v. Hill*, 472 U.S. at 457.

Except for his jurisdictional challenge addressed above, Rodriguez does not challenge the finding that he tested positive for marijuana.  It is not disputed that the report from Phamatec Laboratories constitutes more than "some evidence" of the Code 112 violation charged.  As such, that is enough to support the DHO's conclusion.

It should be noted, however, that Rodriguez's claim that the DHO's reliance on the positive test for opiates was not justified does have merit.  A Code 112 violation is described as the use of drugs "not prescribed for the individual by the medical staff."  28 C.F.R. § 541.3, Table 1.  Rodriguez argues that he was prescribed Acetaminophen with Codeine at the time and that the drug would have caused a

10

positive result for opiates.   In support of his claim, he has attached Medication Administration Records that reflect the prescription.  Doc. 1-1, pp. 11-12.  Despite what the records obviously show, Respondent dismisses Rodriguez's argument as "unsubstantiated," but offers nothing to undermine the claim.  Ultimately, however, even if the positive test for opiates is disregarded, the positive test for marijuana supports the DHO's findings under the legal standard applicable to prison discipline challenges.

### C.    Eighth Amendment

In Ground Two, Rodriguez contends that the disciplinary process and associated penalties amount to cruel and unusual punishment under the Eight Amendment.  Rodriguez does not appear to be raising a claim of excessive force. *See, e.g., Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  Rather, the claim appears to allege that his punishment for the Code 112 violation violates the proportionality principle imposed by the Eighth Amendment.   *See Ewing v. California*, 538 U.S. 11, 23 (2003) (Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime").   However, depriving a prisoner of phone calls and visits for a year does not violate the Eighth Amendment. *See Overton v. Bazzetta*, 539 U.S. 126, 136–37 (2003) (two-year ban on visits to inmates who had committed two or more substance-abuse violations does not violate the Eighth Amendment); *Toussant v. McCarthy*, 597 F.Supp. 1388, 1413 (N.D.Cal.1984) ("Plaintiffs cite to no authority for the assertion that the complete denial to inmate of access to telephone violates contemporary standards of decency

11

1   inherent in the Eighth Amendment"), *aff'd in part, rev'd and remanded in part*, 801

2   F.2d 1080 (9th Cir. 1986); *Williams v. ICC Committee*, 812 F.Supp. 1029, 1034 (N.D.

3   Cal. 1992) (same).   Nor is the loss of 41 days of good time credit so grossly

4   disproportionate to Rodriguez's misconduct as to violate the Eighth Amendment.

5   *See, e.g., Rummel v. Estelle*, 445 U.S. 263, 271 (1980); *Tellez v. Ives*, 518 Fed.Appx.

6   566, 567 (9th Cir. 2013).

7   **III.   RECOMMENDATION**

8          Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

9   District Court, after its independent review, **deny and dismiss** Rodriguez's Petition

10  for Writ of Habeas Corpus (Doc. 1).

11         This Recommendation is not an order that is immediately appealable to the

12  Ninth Circuit Court of Appeals.   Any notice of appeal pursuant to Rule 4(a)(1),

13  Federal Rules of Appellate Procedure, should not be filed until entry of the District

14  Court's judgment.

15         However, the parties shall have fourteen (14) days from the date of service of

16  a copy of this recommendation within which to file specific written objections with

17  the District Court.   *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the

18  Federal Rules of Civil Procedure.   Thereafter, the parties have fourteen (14) days

19  within which to file a response to the objections.   If any objections are filed, this

20  action should be designated case number: **CV 14-2139-TUC-JAS**.   Failure to timely

21  file objections to any factual or legal determination of the Magistrate Judge may be

22

considered a waiver of a party's right to *de novo* consideration of the issues.  *See*

*United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

Dated this 27th day of January, 2016.


Jacqueline M. Rateau
United States Magistrate Judge